**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

FRED MICHAEL DAVIS, CLARENCE
BROUSSARD, ALAIN PIERRE,
MEGAN WEBER, MEREDITH RIEGER
BRANCIFORTE, GINA MURRAY,
TANJA MCPETERS, COURTNEY
WOOD, HAYLEY DENMAN, and
KRISTIN CACAYORIN, individually and
on behalf of all others similarly-situated,

              Plaintiffs,

v.

THE FRESH MARKET, INC., a Delaware
Corporation, and TYSON FRESH
MEATS, INC., a Delaware Corporation,

              Defendants.

_____/

**CLASS ACTION**

CASE NO.:

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, FRED MICHAEL DAVIS ("Davis"), CLARENCE BROUSSARD ("Broussard"), ALAIN PIERRE ("Pierre"), MEGAN WEBER ("Weber"), MEREDITH RIEGER BRANCIFORTE ("Rieger Branciforte"), GINA MURRAY ("Murray"), TANJA MCPETERS ("McPeters"), COURTNEY WOOD ("Wood"), HAYLEY DENMAN ("Denman"), and KRISTIN CACAYORIN ("Cacayorin") ("Plaintiffs"), individually and on behalf of all others similarly-situated, by and through their undersigned counsel, and pursuant to Rule 23, Fed. R. Civ. P., file this Class Action Complaint and Demand for Jury Trial, and bring this action against Defendants, THE FRESH MARKET, INC., a Delaware corporation ("Fresh Market"), and TYSON FRESH MEATS, INC., a Delaware corporation ("Tyson"), and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this consumer protection and false advertising class action lawsuit against Defendants, based on Defendants' misleading business practices with respect to the sale of "Prime Pork".

2.      Defendant, Fresh Market is a company that owns a chain of specialty grocery retail stores in the eastern United States. On information and belief, there are approximately 161 Fresh Market locations in the following 22 states: Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, and Virginia.   *See* https://www.thefreshmarket.com/your-market/store-locator.

3.      Fresh Market markets to upscale consumers expecting high quality goods and products.

4.      Defendant, Tyson is a company that describes itself as "the industry's leading fresh meat supplier" which "is committed to exceeding expectations and delivering top-tier quality products to ensure the success of [their] retail and foodservice industry partners." *See* https://www.tysonfreshmeats.com/who-we-are.

5.      Commencing in February 2017, Tyson, via its officers and directors, decided to trade off of the known quality and prestige of USDA Prime Beef and create a line of pork products entitled "Chairman's Reserve Prime Pork" (hereafter referred to as "Prime Pork" or the "Product") in an effort to increase its pork sales to its retail partners.

6.      In creating the Product, Tyson developed a comprehensive and uniform marketing campaign to use with its retailers, such as Fresh Market, to mislead and confuse

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

consumers.

7.      Commencing in May 2019, Fresh Market, via its officers and directors, partnered with Tyson to sell the Product in its stores. In so doing, Fresh Market decided to trade off of the known quality and prestige of USDA Prime Beef and to "elevate" its pork to "Prime" in an effort to increase its pork sales in its stores.

8.      At all relevant times, Tyson and Fresh Market have marketed and sold the Product "Prime Pork." The Product's advertising and marketing led Plaintiffs and other consumers to reasonably believe that they were purchasing pork that was, *inter alia*, graded USDA "Prime." The Product's marketing, promotion, and advertising was strongly influenced by Tyson, and in some cases directly provided by Tyson, as part of a conspiracy between Tyson and Fresh Market to deceive and mislead consumers about the Product.

9.      In reality, there is no such thing as "Prime" Pork. The Product is not graded by the USDA as "Prime". In fact, the USDA does not provide grades for pork in a fashion similar to beef, as set forth below.

10.     Defendants have engaged in deceptive practices that are likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment. Defendants' marketing, promotion, and advertising created a net impression that was deceptive. Defendants' deceptive and misleading marketing, promotion, and advertising was available to consumers when they purchased the Product.

11.     Plaintiffs and other consumers are willing to pay a premium for USDA Prime Beef. Plaintiffs and other consumers paid a premium for the Product based on Defendants' deceptive and misleading marketing, promotion, and advertising of the Product. Plaintiffs and other consumers paid more money for the Product than they would

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

have paid had they known that there is no such thing as "Prime" Pork or that the Product was not graded as prime by the USDA. Plaintiffs and other consumers have suffered injury in fact as a result of Defendants' deceptive practices.

12.     Plaintiffs bring this class action lawsuit on behalf of themselves and all other similarly situated individual persons who made a retail purchase of the Product on or after February 1, 2017, with a sub-class of all individual persons who made a retail purchase of the Product from Fresh Market on or after May 1, 2019 in any of the following states: Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, and Virginia (the "Class").

13.     Plaintiffs, on behalf of themselves and the Class, are seeking damages, restitution, and injunctive relief, and all other remedies this Court deems appropriate, in this action for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501. 201-501.213 (FDUTPA), and similar statutes of other states, unjust enrichment, and civil conspiracy to violate FDUTPA and similar statutes of other states.

## PARTIES

14.     Plaintiff, Fred Michael Davis is an individual residing in Ocean County, New Jersey.

15.     Plaintiff, Clarence Broussard is an individual residing in Miami-Dade County, Florida.

16.     Plaintiff, Alain Pierre is an individual residing in Miami-Dade County, Florida.

17.     Plaintiff, Megan Weber is an individual residing in Miami-Dade County, Florida.

18.     Plaintiff, Meredith Rieger Branciforte is an individual residing in Miami-Dade County, Florida.

19.     Plaintiff, Gina Murray is an individual residing in Miami-Dade County, Florida.

20.     Plaintiff, Tanja McPeters is an individual residing in Cobb County, Georgia.

21.     Plaintiff, Courtney Wood is an individual residing in Miami-Dade County, Florida.

22.     Plaintiff, Hayley Denman is an individual residing in Miami-Dade County, Florida.

23.     Plaintiff, Kristin Cacayorin is an individual residing in Leon County, Florida.

24.     During the Class Period, Plaintiffs purchased the Product.

25.     Defendant, The Fresh Market, Inc., is a Delaware corporation with an address of 628 Green Valley Road, Suite 500, Greensboro, NC 27408.

26.     Defendant, The Fresh Market, Inc., has been and is doing business in the State of Florida. Defendant, The Fresh Market, Inc., markets and sells the Product to consumers throughout the United States, including thousands of consumers in the State of Florida.

27.     Defendant, Tyson Fresh Meats, Inc., is a Delaware corporation with an address of 800 Stevens Port Drive, Dakota Dunes, SD 57049.  Defendant, Tyson Fresh Meats, Inc., is a wholly owned subsidiary of Tyson Foods, Inc., a Delaware corporation

- 5 -

which has its principal place of business in Springdale, Arkansas.

28.     Defendant, Tyson Fresh Meats, Inc., has been and is doing business in the State of Florida. Defendant, Tyson Fresh Meats, Inc., markets and sells the Product to retailers throughout the United States, including the Fresh Market locations in Florida.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over this class action under 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides federal courts with original jurisdiction in which any member of a class is a citizen of a state different from any defendant, there are more than 100 class members, and in which the matter in controversy exceeds in the aggregate the sum of $5 million, exclusive of interest and costs.

30.     The amount in controversy, exclusive of interest and costs, exceeds $5 million.  There are over 100 class members.

31.     Plaintiffs are citizens of the State of Florida, the State of Georgia, and the State of New Jersey, and both Defendant, The Fresh Market, Inc., and Tyson Fresh Meats, Inc., are Delaware corporations. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

32.     Plaintiffs seek certification of a class of all persons who reside in the fifty states of the United States and the District of Columbia who purchased the Product on or after February 1, 2017, with a sub-class of all persons who purchased the Product from Fresh Market on or after May 1, 2019, in any of the following states: Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, New Jersey, New York, North Carolina, Ohio,

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

Oklahoma, Pennsylvania, South Carolina, Tennessee, and Virginia.

33.      This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with this district and the State of Florida. Defendants intentionally avail themselves of the Florida market through their marketing and sales of the Product in the State of Florida and by having such other contacts with Florida so as to render the exercise of jurisdiction over them by the Florida courts consistent with traditional notions of fair play and substantial justice.

34.      Defendant Fresh Market owns and maintains an interactive website, www.thefreshmarket.com, which is accessible to citizens of this judicial district, and which markets the product in this jurisdiction and in this judicial district.

35.      Defendant Tyson owns and maintains interactive websites, https://www.tysonfreshmeats.com, and https://www.chairmansreservemeats.com, which are accessible to citizens of this judicial district, and which market the product in this jurisdiction and in this judicial district.

36.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to the alleged claims occurred in Miami-Dade County, Florida, in this district; Defendants are authorized to conduct business in this district; Defendants have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution, and sale of the Product in this district; Defendants do substantial business in this district; and Defendants are subject to personal jurisdiction in this district.

37.      Defendant Fresh Market has approximately 46 store locations in the State of Florida, including approximately 5 store locations in Miami-Dade County, Florida.

38.     Tyson sells the Product in Fresh Market and other grocery retailers located in the State of Florida and in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

### *I. Tyson Introduces Chairman's Reserve Prime Pork*

39.     On or about February 19, 2017, Tyson introduced its "Chairman's Reserve Prime Pork" at the Annual Meat Conference. *See* https://www.meatpoultry.com/articles/15872-tyson-fresh-meats-introduces-new-pork-line-at-annual-meat-conference

40.     Tyson's Chairman's Reserve Prime Pork is "an all-natural, minimally processed, hand-selected and hand-trimmed line of fresh pork by Tyson Foods subsidiary, Tyson Fresh Meats." *See* https://www.meatpoultry.com/articles/15872-tyson-fresh-meats-introduces-new-pork-line-at-annual-meat-conference

41.     On or about March 23, 2017, Mr. Kent Harrison, Tyson's Vice President of marketing and premium products, gave a statement to journalists regarding the Product.

42.     In his statement, Tyson's Vice President Mr. Harrison broadly compared the Product to USDA Prime Beef, stating "People know of 'prime.' They get it right away." *See* https://www.theshelbyreport.com/2017/03/23/tysons-chairmans-reserve-prime-pork/.

43.     Furthermore, in his statement, Mr. Harrison detailed the uniform marketing strategy for selling the Product to retailers, and ultimately, to the consumers:

> "We've got to partner with the retailer, who will be able to communicate with the consumer, whether that's at the store level or working with us with the collateral that we provide, so that they can understand this is really good."

> "It is critical to find a retailer that will work with us . . . He needs to buy in so that it's displayed, that it has the right labeling, that they've got the right communication. Part of it is identification, part of it is written material, but when

you can get them to believe enough that the store-level employees are talking about it, that's when you win. We need to partner with the retailer."

*See* https://www.theshelbyreport.com/2017/03/23/tysons-chairmans-reserve-prime-pork/.

44.     Previous to the introduction of its Chairman's Reserve Prime Pork, Tyson's pork offerings included, *inter alia*, Chairman's Reserve Premium Pork. *See* https://www.winsightgrocerybusiness.com/fresh-food/chairmans-reserve-rolls-best-them. Mr. Kent Harrison, vice president of marketing and premium programs for Tyson Fresh Meats, described Prime Pork as "better" than Premium Pork. *See* https://www.theshelbyreport.com/2017/03/23/tysons-chairmans-reserve-prime-pork/. *See also* https://www.provisioneronline.com/articles/107216-prime-time-pork-tyson-chairmans-reserve-prime-pork-features-best-of-the-best (Ms. Ozlem Worpel, senior brand manager at Tyson Fresh Meats, compared Tyson's Premium Pork and Prime Pork, stating, Prime Pork is "'the heart of the watermelon' -- the best part.").

**II. Faced With Declining Profits, Tyson Exerts Further Control and Influence Over its Retailers' Marketing of the Product**

45.     On May 7, 2018, Tyson released its quarterly report (10-Q), reflecting an "8% dip in income for the first half of the year." *See* https://www.globalmeatnews.com/Article/2018/05/16/Tyson-launches-butcher-scheme. With respect to its pork segment, Tyson reported a decrease in sales volume, higher livestock costs, reduced operating income, and higher labor and freight costs. However, Tyson reported that its beef, chicken, and prepared foods segments had an increase in sales volume during the same time period. *See*, Tyson Foods, Form 10-Q for the Quarterly Period Ended March 31, 2018.

46.     One week after its 10-Q reflected declining profits from its pork business

and an "8% dip in income for the first half of the year", Tyson stepped up its efforts to market the Product, creating a program to influence the marketing strategies of the retailers carrying the Product, which Tyson called the "Chairman's Reserve Prime Pork Certified Butcher Program."

47.     The "Chairman's Reserve Prime Pork Certified Butcher Program" "aims to educate meat departments with knowledge of the brand and its product offerings." *See* https://www.meatpoultry.com/articles/19463-tyson-fresh-meats-introduces-certified-butcher-program. As stated by Ms. Ozlem Worpel, Senior Brand Manager for Tyson, "we have worked hard to develop this program to ensure our partners receive superior education about the Chairman's Reserve Prime Pork products, brand history, and their attributes." *Id*.

48.     The program, available at no charge to retailers who carry Chairman's Reserve Prime Pork, includes educating and training on the Product. Upon successful completion of the program, "participants will receive . . . **merchandising strategies** . . . certificate and **in-store signage**." *See* https://www.globalmeatnews.com/Article/2018/05/16/Tyson-launches-butcher-scheme (emphasis added).

49.     Tyson maintains a "marketing support" section of its website, whereby it provides marketing and sales support and advertising materials for its retailers and partners in order to "educate consumers about the benefits of . . . Prime products." See https://www.tysonfreshmeats.com/our-brands/chairmans-reserve-meats/marketing-support.

50.     Tyson does not simply provide the Product to its retailers. Tyson engages in marketing and advertising campaigns for the Product which are designed to deceive and

mislead consumers by directly comparing the Product to Prime Beef (*see*, ¶¶ 43, 54), and also "partners" with its retailers, directly influencing and providing marketing materials to the retailers. *See*, ¶¶ 44, 48, 49.

### *III. Tyson Partners with Fresh Market to Sell the Product, Conspiring to Confuse and Mislead Customers*

51.     On or about May, 2019, Fresh Market partnered with Tyson to sell the Chairman's Reserve Prime Pork in Fresh Market stores.

52.     On or about May 21, 2019, Fresh Market released a press release entitled "It's Prime Time for Pork at the Fresh Market – Specialty Grocer Enhances Meat Offerings with Introduction of Prime Pork" ("Fresh Market's Press Release"). Fresh Market's Press Release is attached hereto and marked as part of Composite Exhibit "A".

53.     Contained in Fresh Market's Press Release are broad comparisons of Tyson's Prime Pork Product to USDA Prime Beef (emphasis added):

> "**Just like prime beef**, the new Chairman's Reserve Prime Pork is the upper-echelon of quality in terms of having superior marbling, a visible pink color (which is an indicator of the pH level and translates to a moister piece of meat)."

> "'We're excited to provide our guests with fresh pork that's **the same caliber as our prime beef offerings**,'[1] said Peter Mayes, Director of Meat Merchandising at The Fresh Market." *See* Ex. A.

54.     The broad comparisons are also contained in Fresh Market's social media announcements and introduction of Prime Pork. *See, e.g.*, Ex. A ("Our Director of Meat Merchandising couldn't be more excited to offer pork that is **the same high-caliber as our Premium and Prime beef**.") (emphasis added).

55.     Defendants routinely market the Product on their social media, Instagram,

---

[1] Fresh Market's Prime Beef and Tyson's Prime Beef is USDA Prime Beef.

Facebook, and Twitter.  *See* Ex. A.

56.     Just as Tyson did, Fresh Market, via its officers and directors, implemented its strategic decision to trade off of the known quality and prestige of USDA Prime Beef and to "elevate" and "upgrade" its pork to "Prime" in an effort to increase its pork sales in its stores, which would correspondingly increase pork sales for Tyson.  *See* Ex. A.

### *IV. Despite Tyson and Fresh Market's Comparisons of the Product to Prime Beef, Pork is not Graded with USDA Quality Grades Similar to Beef*

**A. Pork is not graded with USDA quality grades, and the USDA considered and rejected grading pork as "Prime".**

57.     The USDA states that "Pork is not graded with USDA quality grades as it is generally produced from young animals that have been bred and fed to produce more uniformly tender meat." *See* https://www.fsis.usda.gov/wps/portal/fsis/topics/food-safety-education/get-answers/food-safety-fact-sheets/production-and-inspection/inspection-and-grading-of-meat-and-poultry-what-are-the-differences_/inspection-and-grading-differences/

58.     In fact, from 2017-2018, the USDA sought public comment on, and ultimately rejected, revisions to the United States Standards for Grades of Pork Carcasses, which would have provided for quality standards for pork similar to beef, including Prime, Choice, and Select. *See* https://www.regulations.gov/document?D=AMS-LPS-17-0046-0001

59.     In addition, the USDA received a number of comments from pork and meat industry leaders opposing the implementation of revised pork grading standards:

> a. For instance, the Minnesota State Cattlemen's Association opposed the revised standards, stating, "utilizing beef quality grades of Prime, Choice, and Select to qualify the quality of pork should not be considered appropriate as pork does not contain a measurable amount

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

of marbling." *See* https://www.regulations.gov/document?D=AMS-LPS-17-0046-0045.

b.  The Nebraska Cattlemen's Association warned that, "the use of Prime, Choice, and Select on pork will cause confusion among the consumers since those terms have historically been used for beef." *See* https://www.regulations.gov/document?D=AMS-LPS-17-0046-0047.

c.  Pork farmers such as New Fashion Pork commented in opposition, stating that, "the hog farmer delivers to many different facilities and each processor could evaluation (sic) a similar hog carcass differently producing different results in the quality." *See* https://www.regulations.gov/document?D=AMS-LPS-17-0046-0042.

d.  Cargill Protein, a pork procurer, supported the modernization of pork grading standards, but opposed using the "Prime", "Choice" and "Select" labels, stating that "Cargill Protein encourages USDA to develop new terms for pork quality levels that differ from beef to avoid customer and consumer confusion in the marketplace." *See* https://www.regulations.gov/document?D=AMS-LPS-17-0046-0046.

e.  Even the National Pork Producers Council ("NPPC"), an association of 42 state pork producer organizations representing the interest of America's 60,000 pork producers and the voice of the U.S. pork industry, submitted a comment in opposition to revised pork grading standards.  The NPPC stated, *inter alia*, that "the consumer . . . will have to make the tough decision between conflicting sources of information, including a false market signal in the form of a grade that does not align with his or her own tastes or experiences." *See* https://www.regulations.gov/document?D=AMS-LPS-17-0046-0015

f.  The NPPC also stated, *inter alia*, that, "[t]here is minimal evidence that pork standards are practical in today's marketplace or that they would increase the quality of products for consumers", and that the "Proposed Pork Standards [are] Incompatible with Current Industry Practices and Capabilities".  *See* https://www.regulations.gov/document?D=AMS-LPS-17-0046-0015

60.    Based on comments received, the USDA rejected the revised pork grading standards, citing, *inter alia*, comments stating that "implementation of the revised pork standards would be **impractical**, in part because the technology available to accurately assess quality factors for pork is not yet effective . . ." and concern that application of a

- 13 -

revised standard "would be **misleading**". (emphasis added) *See* https://www.regulations.gov/document?D=AMS-LPS-17-0046-0052, https://www.regulations.gov/document?D=AMS-LPS-17-0046-0036, https://www.regulations.gov/document?D=AMS-LPS-17-0046-0052

**B.   The USDA has strict specifications and criteria for the grading of Prime Beef.**

61.    The USDA has strict specifications and criteria for beef to qualify as "USDA Prime". *See, e.g.*, https://www.ams.usda.gov/grades-standards/slaughter-cattle-grades-and-standards, https://www.ams.usda.gov/grades-standards/carcass-beef-grades-and-standards.

62.    USDA Prime Beef "is produced from young, well-fed beef cattle." *See* https://www.ams.usda.gov/sites/default/files/media/AMSProductLabelFactsheet.pdf. USDA Prime Beef has "the highest marbling score or fat content, followed by USDA Choice."  *See* https://www.usda.gov/media/blog/2014/05/15/beef-your-knowledge-meat-marbling-101.

63.    USDA Prime Beef is "the highest grade of beef in the U.S." and "contains about 8 to 13 percent fat and comes from young cattle . . . Less than 2 percent of U.S. meat is graded Prime." *See* https://www.masterclass.com/articles/breaking-down-usda-meat-grades-difference-between-prime-choice-select-meat-grades#a-brief-history-of-meat-grading-in-the-us.

***V. Despite the Risk of Consumer Confusion, Tyson and Fresh Market Implemented and Deceptively Utilized the Term "Prime Pork" in Their Advertising and Marketing Materials for the Product***

64.    Despite the USDA's consideration and rejection of pork grading standards similar to those used for beef, including but not limited to utilization of the designation

Solowsky & Allen, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

"Prime", and despite the numerous concerns of meat industry executives that using beef grading terms for pork will cause consumer confusion in the marketplace, both Tyson and Fresh Market have implemented and deceptively utilized the term "Prime" in their uniform advertising and marketing materials for the Product, implying a (false) relation between beef and pork grading standards.

65.     Tyson's Vice President of marketing and premium products all but admitted that the intent of Tyson's uniform marketing strategy for the Product was to create a misleading comparison to USDA Prime Beef when he stated, "People know of 'prime.' They get it right away."   *See*   https://www.theshelbyreport.com/2017/03/23/tysons-chairmans-reserve-prime-pork/.

66.     In addition, Tyson's website for its Chairman's Reserve line of meats contains photos of USDA Prime Beef immediately next to the Product, specifically intended by Tyson to confuse and mislead consumers.   *See* https://www.tysonfreshmeats.com/our-brands/chairmans-reserve-meats/prime-meats):



Claims like "the best of the best" must be backed up by results. The Prime tier of *Chairman's Reserve* Meats represents our most superior cuts, backed by specifications that rival all competitors in the marketplace.

By elevating our already-strict criteria, we're ensuring your customers a consistently mouthwatering eating experience.

67.     Tyson also maintains a website which directly and deceptively markets the Product to consumers,   https://www.chairmansreservemeats.com/prime-meats/

("Discerning customers like you expect the best."), in which Tyson again misleadingly displays images of Prime Beef alongside images of the Product, promoting the Product as part of "[t]he Prime tier of Chairman's Reserve® Meats".



68.     Despite the fact that the USDA has strict specifications and criteria for beef to qualify as Prime Beef, while the USDA does not grade pork as Prime, Tyson's uniform marketing campaign misleadingly conflates Prime Beef and Prime Pork in promoting its "Prime tier of Chairman's Reserve Meats" including beef and pork together.



*See*   https://www.tysonfreshmeats.com/our-brands/chairmans-reserve-meats/marketing-support.

69.     As the above image shows, the marketing for Chairman's Reserve Prime Pork is intentionally and substantially similar to that of Chairman's Reserve Prime Beef. It is notable that the top portion of the labeling for Chairman's Reserve Prime Beef, a USDA

graded product, omits any reference to USDA grading, stating only that it is "Chairman's Reserve Prime Beef". The USDA grading for the Prime Beef appears in small, gray font on a gray background in the bottom portion of the label. The act of omitting the words "USDA" before "Prime Beef" serves to create confusion between the Chairman's Reserve Prime Beef label, which reflects a USDA graded product, and Chairman's Reserve Prime Pork, which is not graded as such.

70.     Furthermore, in March, 2019, when Tyson launched its Chairman's Reserve Prime Beef line, Tyson's Senior Brand Manager, Ms. Ozlem Worpel made a direct comparison between the Product and its USDA graded Prime Beef line, stating, "Our USDA Prime quality grade beef keeps in step with the exacting standards of **our Prime Pork counterpart**."  *See*  https://www.globalmeatnews.com/Article/2019/03/05/Tyson-Fresh-Meats-unveils-premium-brand (emphasis added).

71.     With respect to Fresh Market's marketing of the Product, Fresh Market disseminated its Press Release in which it makes broad comparisons of Tyson's Prime Pork Product to USDA Prime Beef.  *See* Fresh Market's Press Release ("**Just like prime beef**"; "pork that's **the same caliber as our prime beef offerings**").  *See* Ex. A.

72.     Defendants interchangeably use the term Prime for their Prime Beef and their Prime Pork, despite the fact that the USDA has strict specifications and criteria for beef to qualify as Prime Beef, while the USDA does not grade pork as Prime.  Defendants' interchangeable use of the term Prime for both their Prime Beef and their Prime Pork is misleading in that Prime Beef has earned the designation of Prime by satisfying strict specifications and criteria of the USDA, while Prime Pork cannot earn (and has not earned) the designation of Prime by the USDA.

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

73.     Tyson's uniform marketing campaign includes in-store and online point-of-sale advertisements and promotional materials for its retailers, such as Fresh Market, to use. *See* Ex. A.

74.     Tyson's uniform in-store advertisements and promotional materials are designed to be placed outside and throughout the retail stores, including at the checkout counter, at the butcher counter, in the butcher counter display window, and on the screen of payment system devices. *See* Ex. A. In fact, as directed by Tyson, Fresh Market uses Tyson's uniform in-store advertisements and promotional materials outside and throughout its stores, including at the checkout counter, at the butcher counter, in the butcher counter display window, and on the screen of payment system devices. *See* Ex. A.

75.     For example, in the butcher counter display window at Fresh Market, Defendants interchangeably use the term Prime in connection with both Prime Beef and Prime Pork:



76.     In addition, Defendants uniformly implement pricing placards that deceptively and misleadingly characterize the Product as Prime Pork:

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223



77.     Similarly, Tyson provides comprehensive online advertisements and promotional materials for its retailers, such as Fresh Market, to use. *See* Ex. A.  In fact, as directed by Tyson, Fresh Market uses Tyson's comprehensive online advertisements and promotional materials on its website. *See* Ex. A.

78.     Tyson's uniform marketing campaign provided to its retailers such as Fresh Market, including in-store and online point-of-sale advertisements and promotional materials, prominently features the interchangeable use of the term Prime for both Prime Beef and Prime Pork. *See* Ex. A.

79.     Tyson and Fresh Market, via their officers and directors, implemented their strategic decisions to trade off of the known quality and prestige of USDA Prime Beef by repeatedly displaying USDA Prime Beef with Prime Pork and describing both together as

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

"Prime".

80.     Additionally, Tyson and Fresh Market, via their officers and directors, implemented their strategic decisions to trade off of the known quality and prestige of USDA Prime Beef by repeatedly using the word "Prime" in their marketing materials in conjunction with both USDA Prime Beef and Prime Pork.

81.     Tyson and Fresh Market conflate Prime Beef and the Prime Pork by marketing both meats using the umbrella statements, "Taste the Prime Difference", "Time to Prime the Grill", "Its Prime Time" and "The Prime Difference".

82.     Tyson and Fresh Market use the term "Prime" interchangeably when marketing both the Product and Prime Beef. *See, e.g.*:



SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223



83.     In addition, in a Press Release entitled, "Time to Prime the Grill", Fresh Market markets its "prime grade beef" and then in the next sentence markets its "New Prime Pork" and collectively, its "prime offerings". *See* Ex. A.

84.     Defendants are misleading Plaintiffs and other consumers in that, *inter alia*, Prime Beef has earned the designation of Prime by satisfying strict specifications and criteria of the USDA, while Prime Pork has not and cannot earn the designation of Prime by the USDA.  Defendants are using their uniform and deceptive marketing, advertising, and promotion of the Product to leverage a misimpression that the Product was designated as Prime like USDA Prime Beef and to cause consumers to believe that the Product has the imprimatur of USDA endorsement when it does not and cannot earn the designation of Prime by the USDA.

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

*VI. Actual Confusion Between the Product and USDA Prime Beef has Been Created in Consumers as a Result of Defendants' Misleading Advertising Campaign*

85.     The website www.amazingribs.com markets itself as "the largest and most popular outdoor cooking website in the world." *See* https://amazingribs.com/information-about-our-pitmaster-club. The website contains the "Pitmaster Club," a message board whereby its members can "get tough questions answered" and discuss barbequing of meat, including pork. *Id.*

86.     On or about May 25, 2019, a user on the Pitmaster Club created a forum thread entitled "Prime (?) Pork at the Fresh Market." In this thread, users described the confusion created by the offering of Chairman's Reserve Prime Pork at the Fresh Market. *See*      https://pitmaster.amazingribs.com/forum/the-pit-mastery-program/porknography-ribs-pulled-pork-ham-etc/684560-%E2%80%9Cprime%E2%80%9D-pork-at-the-fresh-market

87.     The creator of the forum thread, confused by the marketing of the Product and the comparisons to USDA Prime Beef, stated, "I don't recall seeing any other reference in the past to 'prime' as it relates to anything other than beef. Is this a new thing? Or just a Fresh Market Marketing thing? (I'll assume they do truly grade better unless someone here informs me otherwise)." *Id.*

88.     Consumers have been and are confused as to the grading of the Product due to Defendants' use of "Prime Pork" and the numerous comparisons of the Product to USDA Prime Beef in Defendants' marketing materials.

89.     In addition, while Tyson's Chairman's Reserve Prime Pork Certified Butcher Program aims to "educate" butchers on the Product, who in turn are supposed to

educate the consumers, at the time of purchase, consumers remain confused by Defendants' display, promotion, and marketing of the Product.

90.    Defendants' uniform use of "Prime Pork" in their marketing and promotional materials in conjunction with their many direct comparisons of the Product to USDA Prime Beef in their marketing and promotional materials is designed to and does create confusion between "Prime Pork" and USDA Prime Beef standards in order to create profits for Defendants. The exact type of consumer confusion created by this act was warned against by industry executives in their comments opposing the USDA's proposed revised pork grading standards. The designation of "USDA Prime Beef" is earned by a government-regulated beef standards grading system.  Defendants have implemented a marketing strategy to cash in on the beef industry's use of grading standards for Defendants' own benefit to the detriment of Plaintiffs and other consumers.

91.    The Product's marketing and advertising are misleading to reasonable consumers, including Plaintiffs and other class members, and only serve the profit-maximizing interests of Defendants.

92.    Defendants' strategy to market the Product as "Prime Pork" with comparison and allusion to Prime Beef (a USDA graded product) creates a misleading perception that the Product is "Prime" USDA quality.

93.    Defendants' marketing of the Product was, is, and will continue to be in the future misleading and deceptive in that the Product is not graded "Prime" by the USDA, Plaintiffs and other consumers will likely suffer a real and immediate threat of future injury because Defendants used, are using, and will continue to use in the future deceptive marketing, advertising, and promotion of the Product, and Plaintiffs and other consumers

have purchased, are purchasing, and will continue to purchase the Product.

94.     Each consumer has been exposed to the same or substantially similar deceptive practices.

95.     Plaintiffs and other consumers purchasing the Product suffered injury in fact and monetary loss as a result of Defendants' false, unfair, and deceptive practices.

## VII. Reasonable Consumers are Likely to be Misled by Defendants' Deceptive Designation of the Product as "Prime"

96.     In July 2016, the National Pork Board conducted a national survey of 5,011 United States pork consumers (the "National Pork Board Survey"). *See* https://www.ams.usda.gov/sites/default/files/media/ConsumerValuationPorkQualityLabelingFinalReport.pdf  The National Pork Board is a research and promotion program, and it is comprised of fifteen industry members including a Tyson representative.

97.     The core findings of the National Pork Board Survey include the following:

…where a Prime-only label was introduced, participants **shifted quite dramatically** to the label that helped them identify the higher quality chop. This shift … suggests participants are confused about what constitutes quality and **will respond strongly** to a decision aid (i.e., a label) that helps them do this.  *See* National Pork Board Survey, p. 24 (emphasis added).

In the absence of a cue …, on average, participants do not differentiate among the three quality levels.  The introduction of a single Prime label for the highest quality chop … results in a dramatic increase in the WTP [Willingness To Pay] for the chop…  *See* National Pork Board Survey, p. 27.

**The results suggest that consumers do not currently understand how to use color or marbling to identify quality. Once a label is introduced, they react strongly and are willing to pay a significant premium for a chop where the label suggests better quality.**  *See* National Pork Board Survey, p. 27 (emphasis added).

In general, results suggest introduction of pork quality labels …, in conjunction with an informational campaign that explained importance and use of these labels would initially support large premiums and an overall increase in pork industry revenue.  *See* National Pork Board Survey, p. 27.

- 26 -

98.     Moreover, per the National Pork Board Survey, when consumers were asked, "[h]ow likely would you be to purchase a package of pork chops with the following labels assuming they were all the same size and price", over **60%** of consumers selected a label containing the designation "**Prime**" as their first choice as to which pork chop they were most likely to purchase.  *See* National Pork Board Survey, p. 15.

99.     The National Pork Board Survey conclusively evidences that consumers are likely to be misled by Defendants' uniform deceptive practice in marketing the Product as Prime, and that consumers have paid, are paying, and will continue to pay a premium due to Defendants' uniform deceptive practice in marketing the Product as Prime.

100.    In February 2017, five months after the July 2016 National Pork Board Survey, Tyson introduced Prime Pork.

### PLAINTIFFS' EXPERIENCES

### Plaintiff, Fred Michael Davis

101.    Plaintiff, Davis resides in Toms River, New Jersey and often visits Florida. When in New Jersey and when in Florida, Davis shops at Fresh Market frequently.

102.    Plaintiff, Davis is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

103.    Plaintiff, Davis saw Defendants' marketing materials, advertising and promoting Prime Pork including when he visited Fresh Market and purchased the Product. The marketing materials Plaintiff, Davis saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

104.    Plaintiff, Davis has purchased the Product at Fresh Market locations in New Jersey and Florida, including in Broward County, Florida.

105.    Plaintiff, Davis purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and he paid a premium for it.

### Plaintiff, Clarence Broussard

106.    Plaintiff, Broussard resides in Aventura, Florida, and frequently shops at Fresh Market.

107.    Plaintiff, Broussard is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

108.    Plaintiff, Broussard saw Defendants' marketing materials, advertising and promoting Prime Pork including when he visited Fresh Market and purchased the Product. The marketing materials Plaintiff, Broussard saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

109.    Plaintiff, Broussard has purchased the Product at Fresh Market in Miami-Dade County, Florida.

110.    Plaintiff, Broussard purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and he paid a premium for it.

### Plaintiff, Alain Pierre

111.    Plaintiff, Pierre resides in North Miami, Florida, and often shops at Fresh Market.

112.    Plaintiff, Pierre is familiar with the term "Prime" in relation to meat

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

113.    Plaintiff, Pierre saw Defendants' marketing materials, advertising and promoting Prime Pork including when he visited Fresh Market and purchased the Product. The marketing materials Plaintiff, Pierre saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

114.    Plaintiff, Pierre has purchased the Product at Fresh Market in Miami-Dade County, Florida.

115.    Plaintiff, Pierre purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and he paid a premium for it.

### Plaintiff, Megan Weber

116.    Plaintiff, Weber resides in Miami, Florida, and regularly shops at Fresh Market.

117.    Plaintiff, Weber is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

118.    Plaintiff, Weber saw Defendants' marketing materials, advertising and promoting Prime Pork including when she visited Fresh Market and purchased the Product. The marketing materials Plaintiff, Weber saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

119.    Plaintiff, Weber has purchased the Product at Fresh Market in Miami-Dade

County, Florida.

120.    Plaintiff, Weber purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and she paid a premium for it.

**Plaintiff, Meredith Rieger Branciforte**

121.    Plaintiff, Rieger Branciforte resides in Miami, Florida, and regularly shops at Fresh Market.

122.    Plaintiff, Rieger Branciforte is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

123.    Plaintiff, Rieger Branciforte saw Defendants' marketing materials, advertising and promoting Prime Pork including when she visited Fresh Market and purchased the Product.  The marketing materials Plaintiff, Rieger Branciforte saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

124.    Plaintiff, Rieger Branciforte has purchased the Product at Fresh Market in Miami-Dade County, Florida.

125.    Plaintiff, Rieger Branciforte purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and she paid a premium for it.

**Plaintiff, Gina Murray**

126.    Plaintiff, Murray resides in Miami, Florida, and regularly shops at Fresh Market.

127.    Plaintiff, Murray is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

the USDA.

128.    Plaintiff, Murray saw Defendants' marketing materials, advertising and promoting Prime Pork including when she visited Fresh Market and purchased the Product. The marketing materials Plaintiff, Murray saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

129.    Plaintiff, Murray has purchased the Product at Fresh Market in Miami-Dade County, Florida.

130.    Plaintiff, Murray purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and she paid a premium for it.

### Plaintiff, Tanja McPeters

131.    Plaintiff, McPeters resides in Marietta, Georgia, and occasionally shops at Fresh Market.

132.    Plaintiff, McPeters is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

133.    Plaintiff, McPeters saw Defendants' marketing materials, advertising and promoting Prime Pork including when she visited Fresh Market and purchased the Product. The marketing materials Plaintiff, McPeters saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

134.    Plaintiff, McPeters has purchased the Product at Fresh Market in Fulton County, Georgia.

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

135.   Plaintiff, McPeters purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and she paid a premium for it.

**Plaintiff, Courtney Wood**

136.   Plaintiff, Wood resides in Miami, Florida, and frequently shops at Fresh Market.

137.   Plaintiff, Wood is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

138.   Plaintiff, Wood saw Defendants' marketing materials, advertising and promoting Prime Pork including when she visited Fresh Market and purchased the Product. The marketing materials Plaintiff, Wood saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

139.   Plaintiff, Wood has purchased the Product at Fresh Market in Miami-Dade County, Florida.

140.   Plaintiff, Wood purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and she paid a premium for it.

**Plaintiff, Hayley Denman**

141.   Plaintiff, Denman resides in Miami, Florida, and regularly shops at Fresh Market.

142.   Plaintiff, Denman is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

143.    Plaintiff, Denman saw Defendants' marketing materials, advertising and promoting Prime Pork including when she visited Fresh Market and purchased the Product. The marketing materials Plaintiff, Denman saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

144.    Plaintiff, Denman has purchased the Product at Fresh Market in Miami-Dade County, Florida.

145.    Plaintiff, Denman purchased Prime Pork believing it was designated as Prime like USDA Prime Beef, and she paid a premium for it.

**Plaintiff, Kristin Cacayorin**

146.    Plaintiff, Cacayorin resides in Tallahassee, Florida, and occasionally shops at Fresh Market.

147.    Plaintiff, Cacayorin is familiar with the term "Prime" in relation to meat products and associates it with Prime Beef which has been graded as the highest quality by the USDA.

148.    Plaintiff, Cacayorin saw Defendants' marketing materials, advertising and promoting Prime Pork including when she visited Fresh Market and purchased the Product. The marketing materials Plaintiff, Cacayorin saw while shopping at Fresh Market were Defendants' uniform in-store advertisements and promotional materials displayed outside and throughout Fresh Market.

149.    Plaintiff, Cacayorin has purchased the Product at Fresh Market in Leon County, Florida.

150.    Plaintiff, Cacayorin purchased Prime Pork believing it was designated as

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

Prime like USDA Prime Beef, and she paid a premium for it.

## CLASS ACTION ALLEGATIONS

151.    Plaintiffs, Fred Michael Davis, Clarence Broussard, Alain Pierre, Megan Weber, Meredith Rieger Branciforte, Gina Murray, Tanja McPeters, Courtney Wood, Hayley Denman, and Kristin Cacayorin, bring this action individually and on behalf of all similarly situated consumers pursuant to Fed. R. Civ. P. 23(a) and 23(b).

152.    The class of persons whom Plaintiffs seek to represent is defined as: any person who resides in the fifty states of the United States and the District of Columbia who purchased the Product on or after February 1, 2017, with a sub-class of all persons who purchased the Product from Fresh Market on or after May 1, 2019, in any of the following states: Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, and Virginia. The Class Period is on or after February 1, 2017.

153.    Plaintiffs reserve the right to broaden or narrow the class(es) after a reasonable opportunity to conduct discovery.

154.    Excluded from the Class are Defendants, any parent, subsidiary, successor, or affiliate of Defendants, any entity in which Defendants have a controlling interest, any affiliate, legal representative, heir, or assign of Defendants, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities; also excluded are any federal, state, or local governmental entities, and any judge presiding over this action and the members of his/her immediate family and staff.

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

155.    Plaintiffs and Class members are so numerous that joinder of separate actions on behalf of all members is impracticable.  While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands of other Class members.

156.    There are questions of law and fact common to the Class.

157.    Plaintiff's claims are typical of the claims of other Class members. The named Plaintiffs are members of the Class of affected consumers described herein.

158.    The named Plaintiffs are willing and prepared to serve the action and the proposed Class in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.

159.    The self-interests of the named Plaintiffs are co-extensive with, and are not antagonistic to, those of the absent Class members. The proposed representatives will undertake to represent and protect the interests of the absent Class members.

160.    The named Plaintiffs have engaged the services of counsel indicated below. Counsel are adequately experienced in complex class action litigation, will effectively prosecute this class action, and will assert and protect the rights of, and otherwise will represent the named Plaintiffs and absent Class members.

161.    This action is appropriate as a class action pursuant to Rule 23(b)(1), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

162.    This action is appropriate as a class action pursuant to Rule 23(b)(1), Fed. R. Civ. P., in that Rule 23(a) is satisfied, and prosecuting separate actions by individual

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

class members, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Defendant and would establish incompatible standards of conduct for Defendant.

163.    This action is appropriate as a class action pursuant to Rule 23(b)(2), Fed. R. Civ. P., in that Defendants have acted on grounds that apply generally to all of the members of the class, so that final injunctive relief is appropriate respecting the Class as a whole.

164.    This action is appropriate as a class action pursuant to Rule 23(b)(3), Fed. R. Civ. P., in that this action involves questions of law and fact common to Plaintiffs and all members of the Class. The common questions predominate over any issues affecting individual members of the Class.  The common questions include but are not limited to:

a.   Whether Defendants engaged in unfair methods of competition;

b.   Whether Defendants engaged in unfair and deceptive acts and practices in promoting, marketing, and advertising the Prime Pork Product;

c.   Whether Defendants' false and misleading marketing of the Product as "Prime Pork" and making comparisons and allusions to USDA Prime Beef (a USDA graded product) in their marketing materials for the Product, were unfair and deceptive trade practices;

d.   Whether Defendants have been unjustly enriched by Plaintiffs and class members;

e.   Damages caused to Plaintiffs and class members by Defendants' deceptive and unfair trade practices;  and

f.   Compensation owed to Plaintiffs and class members due to Defendants' unjust

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

enrichment.

165. Judicial determination of the common legal and factual issues in this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

166. There is no plain, speedy, or adequate remedy other than by maintenance of this lawsuit as a class action because individual damages are relatively small in comparison to the cost of initiating and prosecuting a claim individually against Defendants, making it economically infeasible for Class members to pursue remedies individually.

167. Plaintiffs and other members of the Class have ascertainable damages and injuries.

168. Plaintiffs and members of the Class suffered harm as a result of Defendants' deceptive and unfair trade practices in that they paid money and did not receive what they paid for.

169. Plaintiffs and members of the Class altered their position to their detriment and suffered damages due to Defendants' deceptive and unfair trade practices, and their unjust enrichment.

170. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Members of the Class do not have an interest in pursuing or individually controlling the prosecution of separate claims against Defendants as set forth herein due to the complexity, expense, and burden of individual prosecution of such claims. In the interests of justice and judicial economy, it would be desirable to concentrate the litigation of all Class members' claims in a single action, in a single forum. Management of this action as a class action will not present any foreseeable difficulties.

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

171.    Determination on a class-wide basis of the facts and issues raised herein concerning Defendants' deceptive and unfair trade practices, and Defendants' unjust enrichment at the expense of Plaintiffs and class members, will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort, expense, and ensure uniformity of decisions.

## COUNT I
## VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, SECTION 501.201, ET. SEQ., FLORIDA STATUTES, AND SIMILAR LAWS OF OTHER STATES
### (Against Defendant Fresh Market)

172.    Plaintiffs reincorporate and re-allege the allegations of Paragraphs 1 through 171 as if fully set forth herein, and conjunctively and alternatively allege as follows.

173.    This is a claim by Plaintiffs against Defendant Fresh Market for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501. 201-501.213 ("FDUTPA"), and similar laws of other states.

174.    Plaintiffs are consumers as defined in the Act. *See* Fla. Stat. § 501.203 ("Consumer means an individual . . . ").

175.    Defendant Fresh Market was engaged in trade or commerce as defined in the Act. *See* Fla. Stat. § 501.203 ("Trade or commerce means the advertising, soliciting, providing, offering, or distributing … any good or service…").

176.    Defendant Fresh Market committed deceptive and unfair acts and practices while engaged in trade or commerce, as defined in the Act.

177.    Defendant Fresh Market's deceptive and unfair trade practices and acts were likely to mislead reasonable consumers to the detriment of those consumers.

178.    As a result of Defendant Fresh Market's deceptive and unfair acts and trade practices, Plaintiffs and Class members have suffered actual damages.

WHEREFORE, Plaintiffs, Fred Michael Davis, Clarence Broussard, Alain Pierre, Megan Weber, Meredith Rieger Branciforte, Gina Murray, Tanja McPeters, Courtney Wood, Hayley Denman, and Kristin Cacayorin, individually and on behalf of all similarly-situated consumers, respectfully request that this Court certify this action as a plaintiff class action, appoint Plaintiffs as class representatives, appoint Plaintiff's counsel as Class Counsel, award actual and compensatory damages and pre-judgment and post judgment interest, enjoin Defendant Fresh Market's unfair and deceptive acts and practices as violating the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211 (FDUTPA), and similar laws of other states, and order Defendant Fresh Market to engage in corrective advertising, marketing, and promotion, award Plaintiffs and class members the costs of this action and their reasonable attorneys' fees under Section 501.2105, Florida Statutes (FDUTPA) and similar laws of other states, and award any and such other and further relief as this Court deems just, equitable and proper.

## COUNT II
## VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, SECTION 501.201, ET. SEQ., FLORIDA STATUTES, AND SIMILAR LAWS OF OTHER STATES
### (Against Defendant Tyson)

179.    Plaintiffs reincorporate and re-allege the allegations of Paragraphs 1 through 171 as if fully set forth herein, and conjunctively and alternatively allege as follows.

180.    This is a claim by Plaintiffs against Defendant Tyson for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501. 201-501.213

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

("FDUTPA"), and similar laws of other states.

181.    Plaintiffs are consumers as defined in the Act. *See* Fla. Stat. § 501.203 ("Consumer means an individual . . . ").

182.    Defendant Tyson was engaged in trade or commerce as defined in the Act. *See* Fla. Stat. § 501.203 ("Trade or commerce means the advertising, soliciting, providing, offering, or distributing . . . any good or service . . . ").

183.    Defendant Tyson committed deceptive and unfair acts and practices while engaged in trade or commerce, as defined in the Act.

184.    Defendant Tyson's deceptive and unfair trade practices and acts were likely to mislead reasonable consumers to the detriment of those consumers.

185.    As a result of Defendant Tyson's deceptive and unfair acts and trade practices, Plaintiffs and Class members have suffered actual damages.

WHEREFORE, Plaintiffs, Fred Michael Davis, Clarence Broussard, Alain Pierre, Megan Weber, Meredith Rieger Branciforte, Gina Murray, Tanja McPeters, Courtney Wood, Hayley Denman, and Kristin Cacayorin, individually and on behalf of all similarly-situated consumers, respectfully request that this Court certify this action as a plaintiff class action, appoint Plaintiffs as class representatives, appoint Plaintiff's counsel as Class Counsel, award actual and compensatory damages and pre-judgment and post judgment interest, enjoin Defendant Tyson's unfair and deceptive acts and practices as violating the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211 (FDUTPA), and similar laws of other states, and order Defendant Tyson to engage in corrective advertising, marketing, and promotion, award Plaintiffs and class members the costs of this action and their reasonable attorneys' fees under Section 501.2105, Florida Statutes (FDUTPA) and

similar laws of other states, and award any and such other and further relief as this Court deems just, equitable and proper.

## COUNT III
## UNJUST ENRICHMENT
### (Against Defendant Fresh Market)

186.    Plaintiffs reincorporate and re-allege the allegations of Paragraphs 1 through 171 as if fully set forth herein, and conjunctively and alternatively allege as follows.

187.    Plaintiffs and other consumers conferred a benefit on Defendant Fresh Market by purchasing the Product in quantities they otherwise would not have if they would have known the true facts.

188.    Defendant Fresh Market knowingly and voluntarily appreciated, accepted, and retained the benefit conferred upon it by Plaintiffs and other consumers.

189.    Plaintiffs and other consumers conferred a benefit directly upon Defendant Fresh Market.

190.    Plaintiffs and other consumers have no adequate remedy at law.

191.    Under the circumstances, it would be inequitable and it would be in violation of good conscience and fundamental principles of justice and equity for Defendant Fresh Market to retain the benefit conferred by Plaintiffs and other consumers without paying for it.

WHEREFORE, Plaintiffs, Fred Michael Davis, Clarence Broussard, Alain Pierre, Megan Weber, Meredith Rieger Branciforte, Gina Murray, Tanja McPeters, Courtney Wood, Hayley Denman, and Kristin Cacayorin, individually and on behalf of all similarly-situated consumers, respectfully request that this Court certify this action as a plaintiff class

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

action, appoint Plaintiffs as class representatives, appoint Plaintiff's counsel as Class Counsel, award compensation for unjust enrichment and pre-judgment and post judgment interest, award Plaintiffs and class members the costs of this action, and award any and such other and further relief as this Court deems just, equitable and proper.

## COUNT IV
## UNJUST ENRICHMENT
### (Against Defendant Tyson)

192.    Plaintiffs reincorporate and re-allege the allegations of Paragraphs 1 through 171 as if fully set forth herein, and conjunctively and alternatively allege as follows.

193.    Plaintiffs and other consumers conferred a benefit on Defendant Tyson by purchasing the Product from Defendant Fresh Market in quantities they otherwise would not have if they would have known the true facts, correspondingly increasing profits for Defendant Tyson.

194.    Defendant Tyson knowingly and voluntarily appreciated, accepted, and retained the benefit conferred upon it by Plaintiffs and other consumers.

195.    Plaintiffs and other consumers conferred a benefit directly upon Defendant Tyson.

196.    Plaintiffs and other consumers have no adequate remedy at law.

197.    Under the circumstances, it would be inequitable and it would be in violation of good conscience and fundamental principles of justice and equity for Defendant Tyson to retain the benefit conferred by Plaintiffs and other consumers without paying for it.

WHEREFORE, Plaintiffs, Fred Michael Davis, Clarence Broussard, Alain Pierre,

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

Megan Weber, Meredith Rieger Branciforte, Gina Murray, Tanja McPeters, Courtney Wood, Hayley Denman, and Kristin Cacayorin, individually and on behalf of all similarly-situated consumers, respectfully request that this Court certify this action as a plaintiff class action, appoint Plaintiffs as class representatives, appoint Plaintiff's counsel as Class Counsel, award compensation for unjust enrichment and pre-judgment and post judgment interest, award Plaintiffs and class members the costs of this action, and award any and such other and further relief as this Court deems just, equitable and proper.

## COUNT V
## CIVIL CONSPIRACY TO VIOLATE
## FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, SECTION 501.201, ET. SEQ., FLORIDA STATUTES, AND SIMILAR LAWS OF OTHER STATES
### (Against Defendant Fresh Market and Defendant Tyson)

198.    Plaintiffs reincorporate and re-allege the allegations of Paragraphs 1 through 171 as if fully set forth herein, and conjunctively and alternatively allege as follows.

199.    This is a claim by Plaintiffs against Defendants for civil conspiracy to violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501. 201-501.213 ("FDUTPA"), and similar laws of other states.

200.    Plaintiffs are consumers as defined in the Act. *See* Fla. Stat. § 501.203 ("Consumer means an individual . . . ").

201.    Defendants were engaged in trade or commerce as defined in the Act. *See* Fla. Stat. § 501.203 ("Trade or commerce means the advertising, soliciting, providing, offering, or distributing . . . any good or service . . . ").

202.    Defendant Fresh Market and Defendant Tyson conspired to commit unlawful deceptive and unfair acts and practices while engaged in trade or commerce, as

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

defined in the Act.

203. Defendant Fresh Market and Defendant Tyson did in fact act in pursuance of the conspiracy.

204. As set forth above, Defendant Tyson, faced with declining pork profits, by and through its officers, directors, and employees, specifically designed and implemented a marketing and promotional strategy for the Product that created a direct comparison between the Product and USDA Prime Beef in order to confuse and mislead consumers as to the nature of the grading for the Product. *See supra*, ¶¶ 45-50.

205. Defendant Tyson established its intended marketing scheme for the Product with its retailers, such as Fresh Market, to ensure that the Product was "displayed, that it has the right labeling, that [the retailer] has the right communication" in the fashion that Tyson intended. *See supra*, ¶ 43.

206. In addition, Defendant Tyson created its Chairman's Reserve Prime Pork Certified Butcher program, whereby retailers, such as Defendant Fresh Market, could have their butchers "educated" by Tyson on the Product and in exchange would receive marketing materials and strategies on how to maximize sales of the Product, driving profits for the retailer (Fresh Market) and the producer (Tyson). *See supra*, ¶¶ 46-49.

207. Furthermore, Tyson maintains a "marketing support" section of its website, whereby it provides marketing and sales support and advertising materials for its retailers and partners in order to "educate consumers about the benefits of . . . Prime products." See https://www.tysonfreshmeats.com/our-brands/chairmans-reserve-meats/marketing-support. *See supra*, ¶ 49.

208. By so doing, Tyson exercised a degree of influence and control over how

- 44 -

the Product was marketed and promoted as it appeared in stores, how the Product was marketed and advertised by its retail partners, and how customers were to be "educated" about the Product. *See supra*, ¶¶ 43-50.

209.    Defendant Fresh Market, by partnering with Defendant Tyson, and releasing marketing materials under Fresh Market's name in which it described its pork as "Prime Pork" and made comparisons of its "Prime Pork" to USDA Prime Beef, was complicit in the conspiracy to mislead and deceive consumers in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501. 201-501.213 ("FDUTPA"), and similar laws of other states.

210.    As set forth above, the USDA does not grade pork as "Prime." Defendants' marketing and promotion of the Product as "Prime Pork" in conjunction with making comparisons of the Product to USDA Prime Beef in their respective advertising materials was deceptive and unfair to Plaintiffs.

211.    Defendants' deceptive and unfair trade practices and acts were likely to mislead reasonable consumers to the detriment of those consumers.

212.    As a result of Defendants' deceptive and unfair acts and trade practices in pursuance of Defendants' conspiracy to violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501. 201-501.213 ("FDUTPA"), and similar laws of other states, Plaintiffs and Class members have suffered actual damages.

213.    As a result of Defendants' deceptive and unfair acts and trade practices in pursuance of Defendants' conspiracy to violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213 ("FDUTPA"), and similar laws of other states, Plaintiffs and Class members have been damaged in an amount to be proven at trial, but

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER - 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

not less than the difference between the premium price paid for the Product and the price they would have paid had they known the truth about the Product.

214.    As a proximate result of Defendants' deceptive and unfair acts and trade practices in pursuance of Defendants' conspiracy to violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213 ("FDUTPA"), and similar laws of other states, Plaintiffs and other consumers have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs, Fred Michael Davis, Clarence Broussard, Alain Pierre, Megan Weber, Meredith Rieger Branciforte, Gina Murray, Tanja McPeters, Courtney Wood, Hayley Denman, and Kristin Cacayorin, individually and on behalf of all similarly-situated consumers, respectfully request that this Court certify this action as a plaintiff class action, appoint Plaintiffs as class representatives, appoint Plaintiff's counsel as Class Counsel, award damages for civil conspiracy and pre-judgment and post judgment interest, award Plaintiffs and class members the costs of this action, and award any and such other and further relief as this Court deems just, equitable and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand Trial by Jury on issues so triable.

SOLOWSKY & ALLEN, P.L.
915 CITIGROUP CENTER · 201 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 TEL (305) 371-2223

Respectfully submitted,

**SOLOWSKY & ALLEN, P.L.**
*Attorneys for Plaintiffs*
**MASON A. PERTNOY, ESQ.**
Florida Bar No.: 18334
**RICHARD L. ALLEN, ESQ.**
Florida Bar No.: 295485
**STEVEN D. SOLOWSKY, ESQ.**
Florida Bar No.: 124854
915 Citigroup Center
201 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No. (305) 371-2223
Facsimile No. (305) 373-2073
Email: mpertnoy@salawmiami.com
Email: rallen@salawmiami.com
Email: lgardner@salawmiami.com
Email: ssolowsky@salawmiami.com
Email: mlopez@salawmiami.com
Service: pleadings@salawmiami.com

By: ___s/ Mason A. Pertnoy_____
MASON A. PERTNOY
FLORIDA BAR NO. 18334

**MANSFIELD,     BRONSTEIN     &
STONE, LLP**
*Attorneys for Plaintiffs*
**GARY N. MANSFIELD, ESQ.**
Florida Bar No.: 61913
**RONNIE BRONSTEIN, ESQ.**
Florida Bar No.: 84052
**DAVID STONE, ESQ**.
Florida Bar No.: 400432
500 Broward Boulevard
Suite 1450
Fort Lauderdale, Florida 33394
Telephone No.: 954-601-5600
Facsimile No.: 954-961-4756
Email: gary@mblawpa.com
Email: ronnie@mblawpa.com
Email: dstone@davidstonelaw.com
Service: litigation@mblawpa.com

By: ___s/ Gary N. Mansfield_____
GARY N. MANSFIELD
FLORIDA BAR NO. 61913