UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:19-CV-24245-PCH

FRED MICHAEL DAVIS, CLARENCE
BROUSSARD, ALAIN PIERRE, MEGAN
WEBER, MEREDITH RIEGER
BRANCIFORTE, GINA MURRAY, TANJA
MCPETERS, COURTNEY WOOD,
HAYLEY DENMAN, and KRISTIN
CACAYORIN, individually and on behalf of
all others similarly situated,

      Plaintiffs,

vs.

THE FRESH MARKET, INC., a Delaware
Corporation, and TYSON FRESH MEATS,
INC., a Delaware Corporation,

      Defendants.
_____/



CLOSED CIVIL CASE

## ORDER GRANTING MOTION TO DISMISS

      THIS MATTER comes before the Court on Defendants The Fresh Market, Inc.'s, ("Fresh Market") and Tyson Fresh Meats, Inc.'s, ("Tyson") Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Motion") [ECF No. 30], filed March 16, 2020. Plaintiffs filed their Amended Complaint [ECF No. 27] following the Court's Order dismissing their initial complaint without prejudice and with leave to amend [ECF No. 23].

      At the hearing on the Motion to Dismiss Plaintiffs' initial complaint, the Court attempted to clarify the Plaintiffs' allegations. The Court asked whether Plaintiffs claimed that Defendants misrepresented the quality of their Chairman's Reserve Prime Pork product by calling it "prime," or whether Plaintiffs claimed that Defendants misrepresented that the USDA had graded their product as prime. [ECF No. 26 at 17]. Plaintiffs told the Court that their claim was the latter—that Defendants misrepresented that the USDA had graded the product as prime. [ECF No. 26 at 17–22]. The Court allowed Plaintiffs the opportunity to amend their complaint to state such a claim

1

specifically. Plaintiffs have amended their complaint, the Court has reviewed the allegations, and for the following reasons the Court finds that Plaintiffs have failed to state a claim upon which relief may be granted.

## FACTUAL ALLEGATIONS

Plaintiffs are purchasers of Chairman's Reserve Prime Pork, a product produced by Tyson and sold at Fresh Market grocery stores. (AC at ¶ 17). Plaintiffs allege that Defendants' promotional materials touting Chairman's Reserve Prime Pork unfairly deceived them into believing that the pork used in the product was certified by the United States Department of Agriculture ("USDA") as prime in the same way that the USDA certifies beef as prime. (AC at ¶¶ 19–22). The USDA does not grade pork. (AC at ¶ 11). Nevertheless, the USDA approved Defendants' use of the term "prime" in relation to their product, specifically the name "Chairman's Reserve Prime Pork." (AC at ¶ 42). While Plaintiffs acknowledge that Defendants are entitled to call their product "Chairman's Reserve Prime Pork" and to use the descriptive term "prime pork" in their labeling, they nonetheless contend that Defendants made misleading representations in promoting their product. Plaintiffs contend that these representations were deceptive because they caused Plaintiffs to believe, and would cause a reasonable consumer to believe, that the product is graded as prime by the USDA. (AC at ¶¶ 17, 42; ECF No. 26 at 12).

In support of their claim that Defendants' representations were misleading, Plaintiffs include in their Amended Complaint statements which allegedly deceived them into believing that the USDA certified Chairman's Reserve Prime Pork as prime:

1. A newsletter stating,

    > Just like prime beef, the new Chairman's Reserve Prime Pork is the upper-echelon of quality in terms of having superior marbling, a visible pink color (which is an indicator of the pH level and translates to a moister piece of meat). It is 25% more tender than other leading pork brands and the additional marbling imparts a buttery flavor to the pork. "We're excited to provide our guests with fresh pork that's the same caliber as our prime beef offerings . . . ."

    (AC, Ex. 1).

2. A social-media post describing "Prime Pork!" as being of "the same high-caliber as our Premium and Prime Beef." (AC at ¶ 24).

3. A flyer inviting consumers to "Elevate [their] grilling game this season with prime offerings from the Fresh Market, including new <u>Chairman's Reserve Prime Pork</u>, which is 25% more tender than other leading pork brands." (*Id.*).

4. An in-store advertisement reading, "CR Prime Pork[,] Exceptionally Tender, Juicy & Flavorful[;] Introducing Prime Pork." (*Id.*).

5. An in-store digital advertisement reading, "Try our new Prime Pork[:] Exceptionally Tender, Juicy & Flavorful." (*Id.*).

6. A website advertisement stating, "Taste the Prime Difference[.] Our Prime Pork is tender, juicy and flavorful, every time." (*Id.*).

7. A quotation of Tyson's Brand Manager reading, "Our USDA Prime quality grade beef keeps in step with the exacting standards of our Prime Pork counterpart." (AC at ¶ 34).

8. A quotation of Tyson's President of marketing and premium products reading, "People know of 'prime.' They get it right away." (*Id.*).

9. A picture of a website displaying images of prime pork next to prime beef. (*Id.*).

Plaintiffs contend that each of these statements is deceptive "because it gives reasonable consumers the false impression that the product is USDA graded as prime." (*Id.*). It is noteworthy that Plaintiffs do not allege that Defendants actually state that the product is graded by the USDA. In fact, Plaintiffs do not allege that Defendants used the term "USDA" on any label or to describe the grading of their product in any of their promotional materials.[1]

Based on these facts, Plaintiffs allege a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes, sections 501.201 through 501.213, (count one), a conspiracy to commit the same (count two), and unjust enrichment based on Plaintiffs' having conferred a benefit on Defendants by paying a premium for prime pork that they would not have conferred had they known the true facts (count three). (AC at ¶¶ 139–188).

## LEGAL STANDARD

To maintain an action in federal court, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint "fails to state a claim to relief that is plausible on its face," the defendant may seek to

---

[1] It is also noteworthy that Plaintiffs do not allege that Defendant's product is, in fact, not of prime quality.

dismiss the complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Determining the plausibility of a claim to relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 148 (2d. Cir. 2007)).

When alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A deception or fraud claim under FDUTPA requires a "showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)).

Once the defendant challenges the complaint, the Court assesses whether the complaint's factual allegations, any documents incorporated into the complaint by reference, and any matters of which the Court may take judicial notice, if true, would entitle the plaintiff to relief. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). While the Court must accept as true all properly pled factual allegations, the Court need not accept the plaintiff's legal conclusions. *Id.* The Court ultimately must determine whether the complaint describes "factual content" that supports "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. If the complaint does not contain such factual content, the Plaintiff has failed to state a claim upon which relief may be granted, and the Court must dismiss the Complaint. *Id.* at 680 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

Plaintiffs' Amended Complaint alleges that Defendants' above-described representations about their product, Chairman's Reserve Prime Pork, unfairly misled them and other reasonable consumers into believing that the product is graded as prime by the USDA. Defendants move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. They offer three reasons for dismissal. First, they argue that their use of the term "Prime Pork" was approved for use in the name "Chairman's Reserve Prime Pork" by the USDA and thus Plaintiffs' claims are preempted by FDUTPA's safe-harbor provision. Second, they argue that their representations do not state that the USDA certifies their pork and are nothing more than non-actionable puffery touting the unchallenged quality of the product. Finally, Defendants argue that

these representations would not deceive a reasonable consumer into believing that the product is graded by the USDA. The Court finds Defendants' second and third arguments persuasive.

Defendants contend that the USDA's approval of the name "Chairman's Reserve Prime Pork," as well as its corresponding approval of the product's labeling, preempts the Plaintiffs' claims. While Defendants are correct that FDUTPA does not apply to an "act or practice required or specifically permitted by federal or state law," Fla. Stat. § 501.212(1), Defendants do not establish that any branch of the United States government approved their promotional materials, as opposed to the name of their product, such that their promotional materials enjoy the protections of FDUTPA's safe-harbor provision. Defendants rely primarily on *Prohias v. AstraZeneca Pharmaceuticals, L.P.*, 958 So. 2d 1054, 1056 (Fla. 3d DCA 2007), to support their position that a government-approved label preempts a FDUTPA claim for false advertising. Defendants overstate the precedential value of *Prohias*. There, the appellate court did little more than recite the trial court's finding that "the conduct that Plaintiff challenges falls within the safe harbor of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.212(1), because the promotional and advertising activity attacked in the Complaint is supported by the FDA-approved labeling for Nexium® and thus is specifically permitted by federal law." *See Prohias*, 958 So. 2d at 1056 (Fla. 3d DCA 2007) (internal quotation marks omitted). *Prohias* provides no meaningful description of the underlying facts which would allow the Court to analogize the promotional materials in that case to the promotional materials before the Court. What's more, in *Prohias* the FDA, not the USDA, approved the label for the product. *Id.* The FDA has the authority to regulate advertisements in conjunction with labels. *See Sanderson Farms*, *Inc. v. Tyson Foods, Inc.*, 549 F. Supp. 2d 708, 716 (D. Md. 2008) (discussing 21 U.S.C. § 301 *et seq.*). The USDA has no such authority. *Id.* For these reasons, the Court finds that the USDA's approval of the name Chairman's Reserve Prime Pork and corresponding label does not foreclose the possibility that the promotional materials may be false and misleading. *See id.* at 720. Thus, Defendants have not established that Plaintiffs' claims are preempted.

The Court agrees, however, that Plaintiffs do not plausibly allege that Defendants have made actionable misrepresentations under FDUTPA. Plaintiffs contend that Defendants' promotional statements mislead the reasonable consumer into believing that the USDA has graded Chairman's Reserve Prime Pork as prime. Notably, Plaintiffs do not allege that Defendants included language or imagery in any promotional materials, which explicitly indicate that the

5

USDA even grades pork, not to mention as prime. Nor do Plaintiffs allege that the term "USDA" appears on the product's labelling. Nor do they allege that Defendants stated that the product is graded. Instead, Plaintiffs allege that Defendants implied USDA grading by using promotional materials that contain the term "prime" and by comparing the quality of their pork with their prime beef to create a "false impression" that the product is USDA graded. (AC at ¶ 12). To succeed in a claim under FDUTPA, a plaintiff must establish that a defendant engaged in a "deceptive act or unfair practice." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008). Deception occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Property Management, Inc.* 842 So. 2d 773, 777 (Fla. 2003) (quoting *Millennium Communications & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). Plaintiffs do not plausibly allege that a reasonable consumer would be misled by Defendants' promotional materials. On the other hand, Defendants posit that Plaintiffs' theory is implausible because it necessarily assumes that a reasonable consumer, who is sufficiently familiar with the USDA grading scheme for beef, would simultaneously be ignorant of the fact that the USDA does not grade pork and would believe that Defendants' product is USDA-graded despite the absence of the term "USDA," a term which appears on all USDA-graded products, on any label or in any representation that the product is graded. [ECF No. 30 at 19]. The Court determines that it is implausible that Plaintiffs' theoretical reasonable consumer would be misled by Defendants' representations about the quality of Chairman's Reserve Prime Pork. A reasonable consumer sufficiently familiar with USDA grading would note the absence of the term "USDA." Therefore, the Court finds that Plaintiffs do not state a plausible claim under FDUTPA.

Because Plaintiffs do not plausibly allege a FDUTPA claim in Count One, their conspiracy claim in Count Two also fails. *See Rami v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1998) ("an actionable conspiracy requires an actionable underlying tort or wrong").

Finally, to succeed in an unjust enrichment claim, a plaintiff must establish the existence of circumstances under which "it would be inequitable for the defendants to retain [a benefit conferred by the Plaintiff] without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). Plaintiffs fail to state inequitable circumstances for the reasons described

above. Accordingly, absent such inequitable circumstances, the Court concludes that Plaintiffs have failed to state an unjust enrichment claim.

## CONCLUSION

For these reasons, it is hereby

ORDERED AND ADJUDGED that:

1. The Motion to Dismiss the Amended Complaint is GRANTED.

2. The Court having previously granted Plaintiffs the opportunity to amend their complaint to state a plausible cause of action, and the Plaintiffs having failed to do so, the Amended Complaint is DISMISSED WITH PREJUDICE.

3. The Clerk is directed to close the case.

DONE AND ORDERED in Chambers in Miami, Florida, on June 26, 2020.

_____

PAUL C. HUCK
United States District Judge

Copies furnished to:
All Counsel of Record